No. 5673.

TEXAS & PACIFIC RAILWAY COMPANY v. THOMAS BEARD.

1. CHARGE OF COURT—PRACTICE.—When a charge of the court, though correctly stating the law, may, by reason of its general terms, be defective as applicable to the case made by the evidence, it is the right of the party complaining to supply its defects by asking further instructions; failing in this, he can not complain.

2. SALE—DELIVERY—ACTION.—The acceptance of an offer made by a debtor to pay his debt with wood already deposited on land which is owned and possessed by the creditor, constitutes an executed contract and a complete transfer of title to the property. If the contract is that the creditor shall return the wood, provided the debtor will afterward pay the debt in money, the creditor, while the wood remains in his possession, and before a compliance with the permission to pay in money, may maintain an action against a trespasser for the conversion of the property.

ERROR from Parker.     Tried below before the Hon. A. J. Hood.

*B. G. Bidwell,* for plaintiff in error.

*E. P. Nicholson,* for defendant in error.

WILLIE, CHIEF JUSTICE.     This suit was brought by Beard against the railway company, to recover the value of four hundred cords of wood, alleged to have been owned by the plaintiff, and to have been converted by the company to their own use. The railway company pleaded not guilty, specially denied the ownership by Beard, and alleged that the conversion, if it took place at all, was done by one Helm, but not by the authority of the company.     Verdict and judgment was rendered for plaintiff for one thousand dollars, and defendant appealed.     The appellee's testimony showed that a man by the name of Frost had cut some five or six hundred cords of wood from the land of Beard, and thereby became indebted to him.     He had also cut the four hundred cords of wood in controversy and piled it upon Beard's land lying along the railway track.     This latter wood was not taken from Beard's land.     Beard demanded of Frost pay for the wood he had taken from his land.     Frost told him that he would turn over to him the four hundred cords of wood which was already stacked upon Beard's land in settlement of his claim,

but said if he (Frost) should come with the money and settle with Beard, the latter must let him have the wood. To this Beard consented.

Soon afterwards Frost absconded. Some time after this the company attempted to take the wood, but was prevented by the appellee. Its agent (Helm) told the appellee to let the company have the wood, and if it should turn out to be his, the company would pay for it. They went to Weatherford to see a lawyer about this, and while they were gone, the company took the wood. There was some conflict as to what occurred between Helm and Beard, and as to whether the whole of the wood was stacked upon the appellee's land, but the jury having found for the appellee, we must take his version of the matter in support of the verdict.

It was also shown that Frost had a contract to cut and deliver wood to the appellant; but there was no proof that the four hundred cords in controversy were ever delivered by him to the company. On the contrary, it was shown that the wood had not been received by the company at the time of the settlement between Beard and Frost, for it had not then been cut of the size required by his contract with the company, nor had it been inspected by Frost's agent or that of the railroad company. These are the main facts bearing upon the points made in this court. The judge below charged the jury that if the wood belonged to Beard, and the defendant took it, they should find for the plaintiff. This is the only charge complained of, and the ground of complaint is that it did not instruct the jury what would constitute ownership of the property. It is sufficient to dispose of this objection to say that it was certainly correct as a principle of law, and if it did not go further and specify what would constitute a sufficient ownership to entitle the plaintiff to recover, the defendant should have asked special instructions to that effect.

It is claimed by the appellant that the verdict for the plaintiff was not supported by the evidence as to the ownership of the wood.

We think that, taking into consideration all the circumstances proved in behalf of the plaintiff, there was sufficient title in him to maintain the suit. That Frost was indebted to him was shown; that he agreed to settle the debt by turning over the wood to Beard, was also proved. That such an agreement, accompanied by a delivery, would give Beard title, can not be doubted. There

was no understanding that the wood was to be taken from the place where it was lying and carried to any other point for the purpose of delivery. The wood was already on Beard's land, and constructively in his possession. It is evident that it was so treated by both parties. Frost said: "I have piled four hundred cords of wood on your land, and will turn you over that wood in settlement of your claim." This was equivalent to saying: "The wood is already in your *quasi* possession; I will make it yours by transferring the ownership in payment of my debt." The acceptance of this offer was equivalent to an acceptance of the wood at the point where it lay, and operated a complete change of title, together with all claim that Beard could lay to the possession, unless the reservation of a right to pay Frost's indebtedness and receive back the wood affected the contract. The fact that the offer was made in words of the future tense does not affect the matter. All offers are made in that way, and when accepted, and nothing remains to be done by either party, the contract is executed and the title passes.

But it was also agreed that, if Frost paid the debt, the wood was to be returned to him. The appellant contends that this would make the transaction amount to no more than a pledge of the wood to pay the debt; and that it can not amount to even that, because it was a mere promise to pledge in the future. As to the future character of the offer, we have already discussed. Admitting that the acceptance of the offer made the contract a pledge, we see no reason why the suit might not be maintained by the pledgee against a mere wrong doer and trespasser.

This is the recognized rule at common law as to all bailees, and more expressly should it hold good as to those whose possession is coupled with a claim or lien upon the thing pledged. This is admitted by the company, but they claim that the amount recovered should not go entirely to the benefit of the plaintiff, but the surplus, above what was required for the payment of the debt, should be held in trust for the general owner. Admit this; still it does not defeat the recovery obtained by the plaintiff. As to what he should do with the money recovered, was not a question before the court, and his settlement of accounts with Frost was something for after consideration. There was no plea claiming any interest of the defendant in the recovery, and, if there had been, it does not seem that the evidence would have sustained it. There is no proof that the wood was ever sold and delivered by Frost to the company, and it had certainly never acquired

any lien upon the wood by reason of any claim held by it against Frost.

The fact that Frost absconded immediately after the contract with Beard was made, tends strongly to show that he abandoned all claim to pay Beard's debt and receive back the wood, and to show that his original intention was to pass title and possession of the wood to Beard in payment of his indebtedness to Beard.

We think that, under the pleadings and evidence, the jury were justified in finding for the plaintiff, and the judgment is affirmed.

*Affirmed.*